**E-Filed 3/11/2009**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIXZAIDA ASURMENDI,<br><br>              Plaintiff,<br><br>   v.<br><br>TYCO ELECTRONICS CORPORATION, a Pennsylvania corporation; CAROL SAGASTUME, an individual; and DOES 1 through 20,<br><br>              Defendants. | Case Number C 08-5699 JF (PVT)<br><br>ORDER[1] (1) GRANTING MOTION TO REMAND AND (2) DENYING REQUEST FOR ATTORNEY'S FEES |

     Plaintiff Lixzaida Asurmendi ("Plaintiff"), a California resident, filed this action in the Santa Clara Superior Court on November 14, 2008, alleging six claims for relief: (1) age discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (2) harassment in violation of FEHA; (3) retaliation in violation of FEHA; (4) wrongful discharge in violation of public policy; (5) breach of employment agreement; and

---

[1] This disposition is not designated for publication in the official reports.

Case No. C 08-5699 JF (PVT)
ORDER GRANTING MOTION TO REMAND
(JFLC1)

(6) intentional infliction of emotional distress ("IIED").[2]  Plaintiff named as Defendants her former employer Tyco Electronics Corp. ("Tyco"), a Pennsylvania corporation, and her former supervisor Carol Sagastume ("Sagastume"), a California resident.  On December 19, 2008, Defendants removed the instant action to this Court on the ground that Sagastume's joinder was a "sham."  Plaintiff now moves to remand the case to the Superior Court and seeks fees pursuant to 28 U.S.C. § 1447(c).  For the reasons set forth below, the motion will be granted.  The request for fees will be denied.

## I. BACKGROUND

Plaintiff joined Tyco in 1968 at an entry-level position.  Compl. ¶¶ 3, 8.  She worked at Tyco for thirty-nine years, earning several promotions.  *Id.* ¶¶ 3, 8, 10.  Prior to her termination, Plaintiff was a Planner in Tyco's ICD Group, where her responsibilities included calling vendors, checking on inventory, and monitoring production.  *Id.* ¶ 3.  From the time she was hired until 2004, Plaintiff generally received favorable performance reviews.  *See id.* ¶ 11.

Plaintiff alleges that beginning in 2004, Tyco and Sagastume determined that Plaintiff had become too old for her position.  Compl. ¶ 16.  At that time, Plaintiff was over sixty years old and was the oldest employee in the ICD Group.  *Id*. ¶ 17.  According to the complaint, Sagastume began to single out Plaintiff for criticism:

> Sagastume, who is several years younger than [Plaintiff], would criticize [Plaintiff]—and only [Plaintiff]—for work practices that were common to the ICD Group.  Specifically, Sagastume would reprimand [Plaintiff] for doing things "the old fashioned way."

*Id*.  In November 2006, Sagastume transferred certain work away from Plaintiff, giving it to a younger and less experienced employee.  *Id.* ¶ 18.  This prompted Plaintiff to lodge a complaint with Tyco's Human Resources ("HR") Department, in which she stated that she was being singled out because of her age.  *See id*. ¶ 19.  After Plaintiff filed her complaint with HR, Sagastume transferred the work back to Plaintiff.  *Id*.  However, Plaintiff alleges that Tyco's HR Department did little else in response to her concerns.  *See id*. ¶¶ 22, 24.  Several months later,

---

[2] Plaintiff names Sagastume individually in her harassment and IIED claims.  Tyco is a named Defendant for all claims.

2

Sagastume again transferred work away from Plaintiff, to the same younger and less experienced employee as before. *See id.* ¶ 20. Plaintiff alleges that this involuntary workload reduction was part of a scheme to justify her eventual termination by Tyco. *See id*. ¶ 21.

Plaintiff then called Tyco's "ConcernLine," a confidential hotline designed to allow employees to voice concerns about Tyco policies. Compl. ¶ 23. She again described the alleged harassment and informed the ConcernLine staffer that she was being singled out because of her age. *See id.* According to the complaint, Tyco again failed to investigate the alleged discrimination or take any other appropriate action. *See id*. ¶ 24.

Tyco terminated Plaintiff on November 15, 2007. On that day, Plaintiff was summoned to a meeting with Dave Williams ("Williams"), who was Sagastume's supervisor and the manager of ICD Planning. Compl. ¶ 25. Plaintiff alleges the following with respect to the events of that morning prior to her meeting with Williams:

> [Plaintiff] asked Ms. Sagastume if she knew what the meeting was about. Ms. Sagastume responded with words to the effect of: "No, don't worry about it. It is probably about molding." [Plaintiff] then spent part of the morning gathering up information about her molding work so as to be prepared for her 1:30 p.m. meeting with Mr. Williams.

*Id.* ¶ 26. Plaintiff alleges that Sagastume knew the true purpose of the meeting—to terminate Plaintiff—but chose to purposefully conceal this fact. *See id.* ¶ 27. At the meeting, Williams informed Plaintiff of Tyco's decision to terminate her. *Id*. Williams also told Plaintiff that there were no other options for her at Tyco, such as transfer to another department or retraining for a new position. *Id.* ¶¶ 27-28, 30-31. At the time of her termination, Plaintiff was sixty-four years old and a mere sixteen months from achieving full retirement benefits. *Id.* ¶¶ 27, 30.

## II. LEGAL STANDARD

Federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 ordinarily requires complete diversity of citizenship. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). However, where a non-diverse party is named in an action merely to avoid diversity jurisdiction, the fraudulent joinder doctrine permits a court to ignore that non-diverse party's citizenship. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("one

exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"). "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1007 (N.D. Cal. 2001) (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990)). Joinder is considered fraudulent or a sham only "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is *obvious* according to the settled rules of the state." *Id.* at 1008 (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (emphasis added)). The removing party therefore must "prove that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the in-state defendant in state court." *Id.* (quoting *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995) (emphasis added)).

The "evaluation of fraudulent joinder claims does not anticipate a judgment on the merits, but merely considers whether there is any possibility that the plaintiff might prevail." *Easley v. 3M Co.*, No. C 07-03507, 2007 WL 3217536, at *2 (N.D. Cal. Oct. 29, 2007) (quoting *Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996)). In determining whether joinder of a defendant was a fraudulent or a "sham," the Court "may look beyond the pleadings and consider affidavits or other evidence to determine if the joinder was a sham." *Plute*, 141 F. Supp. 2d at 1008. The Court "must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Id.* (quoting *Dodson*, 951 F.2d at 42-43). In addition, "[a]ll doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent." *Id.* (quoting *Archuleta v. American Airlines, Inc.*, No. CV 00-1286 MMM, 2000 WL 656808, at *4 (C.D. Cal. May 12, 2000)).

### III. DISCUSSION

Defendants argue that Sagastume's joinder was fraudulent because there are insufficient factual allegations to support a claim against Sagastume individually for either harassment or

4

IIED. The Court will address each argument in turn.

### A. Harassment

"FEHA prohibits various forms of discrimination in employment." *Reno v. Baird*, 18 Cal. 4th 640, 644 (1998). Prohibited acts include the discharge of an employee "because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation" or retaliation against an employee for complaining about discriminatory employment practices. Cal. Gov't Code §§ 12940(a); 12940(h). FEHA also prohibits harassment, and treats a harassment claim as distinct from a discrimination or retaliation claim. *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 62 (1996). *See also Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1162 (2008) ("Another unlawful employment practice is harassment.").

Section 12940 was amended in 2001, *Jones*, 42 Cal. 4th at 1162 n.2, and prior to amendment treated harassment as follows:

> It shall be an unlawful employment practice…[f]or an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of…[protected classes]…to harass an employee or applicant.

§ 12940(h)(1). Subsection (h) was replaced by new subsection (j), which expressly imposes individual liability on employees as well as employers: "[a]n employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee." § 12940(j)(3). *See also Jones*, 42 Cal. 4th. at 1162 ("This is clear language imposing personal liability on all employees for their own harassing actions."). In contrast, a supervisor cannot be held personally liable for acts of discrimination or retaliation. *See Reno*, 18 Cal. 4th at 663 ("individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts."); *Jones*, 42 Cal. 4th at 1173 ("nonemployer individuals are not personally liable for their role in…retaliation.").

Plaintiff's allegations are consistent with the provisions of § 12940 as her claims for discrimination and retaliation are directed only against Tyco while her claim for harassment alleges liability on the part of both Tyco and Sagastume. Accordingly, Plaintiff's claim against

Sagastume is not facially barred. Defendants nonetheless argue that the complaint fails set forth any facts to support a harassment claim.

Actionable harassment has been described as "conduct not necessary for performance of a supervisory job. Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Janken*, 46 Cal. App. 4th at 63. *See also Reno*, 18 Cal. 4th at 657 ("Behavior that gives rise to a harassment claim is not related to performing one's job duties except insofar as it occurs within the work environment. Behavior that gives rise to a discrimination claim, on the other hand, is often indistinguishable from performing one's job duties."). A supervisor thus may be held personally liable if the offending actions go beyond what is necessary to execute the polices of the employer. A hypothetical discussed in the *Reno* decision helps illustrate this point. There, the plaintiff attempted to impose individual liability on a supervisor for a discrimination claim. The California Supreme Court noted the following with respect to discrimination claims as opposed to allegations of harassment:

> Plaintiff claims the distinction between harassment and discrimination is "unworkable." She argues that *Janken*, "in effect, [says] that an agent of an employer could be personally liable for hanging a pin-up calendar and offending an employee but could not be held liable if the same agent were to shout out loud 'I refuse to hire black people' and then proceed to do just that." Shouting out loud, however, as distinct from making personnel decisions, might be deemed actionable harassment. It is not the type of conduct an employer could properly delegate; making a supervisor liable for that conduct would not create a conflict of interest between the supervisor and the employer.

*Reno*, 18 Cal. 4th at 657. In the instant case, the alleged criticisms by Sagastume—that Plaintiff liked to do things "the old fashioned way"—arguably were not necessary to any personnel decisions that Sagastume was obligated to perform. It also is conceivable that Tyco would have disapproved of Sagastume's comments. Accordingly, Tyco has not met its burden of showing that there is "absolutely no possibility" of an actionable harassment claim against Sagastume. *See Plute*, 141 F. Supp. 2d at 1008.

B. IIED Claim

"The elements of the tort of intentional infliction of emotional distress are: '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982)). To prevail on an IIED claim, the alleged conduct must be so outrageous so "as to exceed all bounds of that usually tolerated in a civilized community." *Davidson*, 32 Cal. 3d at 209. Moreover, the defendant must have intended to inflict emotional distress or known that his or her actions would result in such harm. *See id.*

As with Plaintiff's FEHA claim, the issue here is not whether a supervisor has *per se* immunity from an IIED claim, but rather whether the complaint sets forth any basis for an actionable claim. Defendants take issue specifically with Plaintiff's allegation that Sagastume's behavior was "outrageous" under applicable California law. Using the standard for fraudulent joinder, however, the Court concludes that there is at least a possibility that Plaintiff could prevail in state court on her IIED claim. Sagastume's verbal criticism, which as discussed previously could be construed as conduct outside of normal personnel management activity, also could form a sufficient basis for an IIED claim. *See Bains v. Blockbuster, Inc.*, No. 08-2093, 2008 WL 5099654, at *3 (E.D. Cal. Nov. 25, 2008) (rejecting fraudulent joinder argument because "plaintiff alleg[ed] sufficient facts in the complaint to suggest that individual defendants engaged in actions outside of personnel management activity."). In particular, the alleged misrepresentation by Sagastume on the day Plaintiff was terminated might be sufficient, in light of the totality of the circumstances, for a state court to find that Sagastume's behavior was "outrageous." *See Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1178 (N.D. Cal. 2003) (allegations of a supervisor's deception formed the basis of a possible claim for IIED); *Gibson v. Am. Airlines*, No. C 96-1444, 1996 WL 329632 (N.D. Cal. June 6, 1996) ("As plaintiff in the instant case was denied the right to medical leave in a deceptive manner when other employees

7

were given such a right, a case for intentional infliction of emotional distress may be able to be maintained by plaintiff"). According to the complaint, Sagastume misled Plaintiff about the purpose of the meeting with Williams and may have done so with the intention of causing her further emotional distress. While it may be that Sagastume ultimately will prevail on what appears to be a relatively weak IIED claim, such a consideration is of limited import for purposes of the instant motion, which requires Plaintiff to make even less of a showing than would be required on a motion to dismiss. *See Calero*, 271 F. Supp. 2d at 1178 n.2. Accordingly, the Court concludes that remand is proper because Defendants have "not established that plaintiff's failure to state a claim against individual resident defendants is *obvious* under the settled rules of California." *Bains*, 2008 WL 5099654, at *3 (emphasis in original).

### C. Fees and Costs

The federal removal statute allows the Court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). Plaintiff argues that she is entitled to fees because it was not objectively reasonable for Defendants to remove the instant action in light of the heavy burden required to show fraudulent joinder. In this instance, however, the Court concludes that Defendant's decision to seek removal was not unreasonable in light of the facts and applicable law. Plaintiff's request for costs and attorney's fees will be denied.

## IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion by Plaintiff for remand is GRANTED and Plaintiff's request for attorney's fees is DENIED.  The action is remanded to the Superior Court.

DATED: March 11, 2009

_____
JEREMY FOGEL
United States District Judge

Case No. C 08-5699 JF (PVT)
ORDER GRANTING MOTION TO REMAND
(JFLC1)

This Order has been served upon the following persons:

Edward William Smithers     ews@smitherslf.com

John George Lee     john.lee@ogletreedeakins.com, kat.sovyak@ogletreedeakins.com

Mary Ann O'Hara     mao@smitherslf.com

Thomas Michael McInerney     tmm@ogletreedeakins.com, kathy.cheechov@ogletreedeakins.com

Maureen L. Tabari
Smithers Law Firm
160 West Santa Clara Street
Suite 1025
San Jose, CA 95113-1700

Case No. C 08-5699 JF (PVT)
ORDER GRANTING MOTION TO REMAND
(JFLC1)